IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JEFFREY ZANDER, individually and as Trustee of CARDINAL TRUST, JJZ INSURANCE AGENCY d/b/a ZANDER INSURANCE COMPANY<br>Plaintiffs,<br>vs.<br>KATZ, SAPPER & MILLER, LLP; KSM BUSINESS SERVICES, INC.; and ANDREW J. MANCHIR,<br>Defendants, | Cv. No. 3:12-cv-0967<br>District Judge Sharp/Magistrate Judge Brown. |

## ORDER

Plaintiff originally brought suit against Defendants—Katz, Sapper & Miller, LLP; KSM Business Services, Inc.; and Andrew Manchir—in the Chancery Court of Davidson County, Tennessee, for negligence, negligent misrepresentation, and breach of fiduciary duty in regard to "alleged tax advice" given them by Defendants. (Notice of Removal ("Removal"), Docket Entry ("Doc.") 1, pp. 1-2) On September 19, 2012, Defendants timely removed the case to the United States District Court for the Middle District of Tennessee, asserting jurisdiction under 28 U.S.C. §§ 1332, 1446(b) based upon diversity of citizenship. (Removal, Doc. 1, p. 2)

Subsequent to the scheduling conference conducted upon November 19, 2012, the Magistrate Judge issued a scheduling order establishing December 14, 2012 as the deadline for Rule 26(a) disclosures, July 31, 2013 as the date for disclosure of Plaintiffs' expert witnesses, August 31, 2013 as the date for disclosure of Defendants' expert witnesses, November 1, 2013 as the date for conclusion of expert discovery, and December 6, 2013 as the completion of all discovery. (Doc 11, p. 5) December 2, 2013, and January 10, 2013 were established as the deadlines for dispositive motions and for responses, respectively. (Doc 11, p. 5) On May 15,

2013, Defendants issued their first set of subpoenas for discovery and did not make their first document request until June of 2013. (Doc. 18, 19)

On September 5, 2013, the Magistrate Judge conducted a telephone conference between counsel for Plaintiffs, Mr. Eugene Bulso, and Defendants, Ms. Lacey Adair Bishop, on the subject of the discovery deadlines. (Doc. 43) Ms. Bishop cited sluggish progress in discovery and the volume of documents as grounds for an extension of time in regard to expert depositions. According to Ms. Bishop, Defendants required extensive discovery of voluminous files prior to deposing Plaintiffs experts, and, as of September 5th, only 5 of the eleven subpoenas issued had been responded to. (Recording of Sept. 2013 Telephone Conference)

Mr. Bulso argued that Defendants had been late in conducting discovery. According to Mr. Bulso, Defendants had not prosecuted discovery for the eight months subsequent to removal, and five months since the scheduling order issued in November of 2012. (Recording of Telephone Conference) Ms. Bishop conceded that Defendants had delayed discovery for "tactical" reasons. (Recording of Sept. 2013 Telephone conference) The Magistrate Judge delayed acting on Defendants' request for extension of the discovery schedule until early November and clarified that all discovery was to be completed on December 6, 2013. (Doc. 43)

On October 15th and 17th 2013, Defendants issued notice of intent to depose Plaintiff's experts. According to the record, Defendants noticed the deposition of Larry Sacks and James Berry to be conducted on November 4th (Doc. 50, 51); Dana Holmes, Mike Collins to be conducted on November 5th (Doc. 53, 54); Richard Betts and David Lewis to be conducted on November 8th (Doc. 52, 55); and Stephen Thompson and Brian Eagle to be conducted on December 5th. (Doc. 56, 57) On October 29, 2013, a telephone conference was conducted on the subject of discovery. (Doc. 64) Defendants requested leave of the court to extend the

2

discovery deadlines such that three additional witnesses could be deposed. (Doc. 64) In response, by order dated October 30, 2013, the Magistrate Judge extended both the discovery and dispositive motion deadlines until January 10, 2014. (Doc. 64)

On January 8, 2014, just two days before the close of discovery, the Magistrate Judge extended discovery until January 30, 2013 so that Mark Blackwell, a retired partner from Wyatt, Tarrant and Combs, could be located and deposed. (Doc. 117, p. 1) According to Defendants, Mr. Blackwell was instrumental in the transaction giving rise to the instant suit and his testimony was essential to their defense. (Doc. 117, p. 1) The discovery deadline was extended to February 7, 2014 once Mr. Blackwell was located and agreed to be deposed as Wyatt, Tarrant & Combs' Rule 30(b)(6) representative. (Doc. 117, pp. 1-2) Mr. Blackwell was deposed on February 7, 2014. (Doc. 137)

On April 7, 2014, Defendants' counsel notified Plaintiffs' counsel of their intent to supplement to the report of their expert, Mr. Frank Brown. (Defendants' Motion to Supplement ("M. to Supplement"), Doc. 162, pp. 3-4 ¶ 12) At that time, Defendants offered to make Mr. Brown available to Plaintiffs for the purposes of deposition, but Plaintiffs declined. (M. to Supplement, Doc. 162, p. 4 ¶ 12) On April 21, 2014, Defendants moved to supplement the expert report of Mr. Frank Brown. (Doc. 158) However, Defendants failed to include the proposed supplement. Plaintiffs objected to a supplemental report and filed a brief in opposition on April 28, 2014. (Doc. 159) A hearing was conducted on the matter on May 15, 2014. (Doc. 160) On May 19, 2014, the Magistrate Judge denied Defendants' motion "without prejudice to refile, provided that in refiling the motion the Defendants attach a copy of the proposed supplement of their expert report." (Doc. 161, p. 1)

Defendants refiled their motion to supplement on that same day. (Doc. 162) In support of their motion, Defendants allege that their expert witness' report was initially disclosed on August 29, 2013 and he was deposed on October 23, 2013 well before deposition of any of Plaintiffs' experts. (M. to Supplement, Doc. 162, p. 2) Of particular import to Defendants is a "staffing schedule" allegedly created on October 13, 2013 and disclosed to Defendants on November 4, 2013 at the deposition of Mr. James Berry, and the deposition testimony of Mr. Larry Sacks and Mr. Mark Blackwell. (Motion to Supplement, Doc. 162, pp. 2-3 ¶ 7, 9-10) According to Defendants, the supplement to Mr. Brown's report is needed

> to update and supplement his opinions for any new information and documents produced in this matter, to further analyze any contributing factors to Plaintiffs' allegations, to update and supplement his analysis of the benefits of the ESOP transaction, and to perform a "but for" analysis of the damages allegedly suffered by Plaintiffs as a result of the allegedly negligent actions of Andrew Manchir based on new information and documents produced in this matter. [Further, the supplement is necessary to] respond to the calculation of damages done by Larry Sacks, as part of his expert report and explained during his deposition.

(M. to Supplement, Doc. 162, pp. 5-6 ¶¶ 23-24)

## **LAW AND ANALYSIS**

Defendants assert that Fed. Rule Civ. P. 26(a) and (e) place upon them a duty to supplement the report of their expert witness based upon new and relevant evidence that is disclosed throughout the discovery period. (Defendants' Memorandum in Support of their Motion to Supplement ("D. Memo in Support"), Doc 162-2, p. 3) According to Defendants' argument, the scheduling of deposition testimony was protracted until well after January which necessitates the supplementation of Mr. Brown's report here, well after the February 7th discovery deadline under the court's scheduling order. (D. Memo in Support, Doc. 162-2, p. 3) Defendants also argue that the staffing schedule disclosed late by Plaintiffs and subsequent to Mr. Brown's initial report and deposition testimony is material to their defense, which further

4

warrants supplementation. (D. Memo in Support, Doc. 162-2, pp. 3, 7-8) Lastly, Defendants assert that their attempt at supplementation was attempted prior to the deadline for pre-trial disclosures. (Motion to Supplement, Doc. 162, p. 4 ¶ 13)

Plaintiffs vigorously oppose Defendants' efforts to supplement the expert opinion of Mr. Brown, claiming bad faith and dilatory conduct of discovery on Defendants' part. (Plaintiffs' Motion in Opposition to Supplementation of Expert Report ("P. Motion in Opposition"), Doc. 171, pp. 3, 5-7) Plaintiffs argue that the expanded scope of Mr. Brown's report, Defendants' strategic delay in prosecuting discovery, and Defendants' apparent reticence to be completely forthcoming with the timing and submission of Mr. Brown's supplemental report all point to Defendants' bad faith. (P. Motion in Opposition, Doc. 171, pp. 3-7) Further, Plaintiffs assert that Defendants lack good cause to supplement Mr. Brown's report under Fed. Rule 16(b) due to their dilatory conduct of discovery. (P. Motion in Opposition, Doc. 171, p. 6-7)

Rule 26 provides that "[a] party who has made a disclosure under 26(a) . . . must supplement or correct its disclosure or response [] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Further, "an expert whose report must be disclosed under Rule 26(a)(2)(B) [is mandated] to supplement . . . both information included in the [expert's] report and [] information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). The timing of those disclosures is tied to Rule 26(a)(3)(B)'s requirement that "[u]nless the court orders otherwise, these disclosures must be made at least 30 days before trial." *Id.* at 26(a)(3)(B), (e)(2). However, the advisory committee notes to the 1993 revisions make clear that "disclosures are to be made in accordance with schedules adopted by the court under Rule 16(b)."

5

Fed. R. Civ. P. 16(b)(4) provides that a pre-trial "schedule may be modified *only* for good cause and with the judge's consent."  The purpose of imposing this timing restraint is to force litigants "to establish discovery priorities and thus to do the most important work first." *Advisory Committee Notes to 1983 Amendments to Fed. R. Civ. P. 16.*  As the Sixth Circuit has observed, a determination of good cause shown includes consideration of

> "(1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to . . . discovery requests."

*Bentowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2013) (quoting *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6 th Cir. 2010)) (internal quotations omitted).

Defendants do not allege that Plaintiffs have been less than diligent in their responses to discovery requests.  To the contrary, Defendants arguments rest almost exclusively on their need to supplement Mr. Brown's expert opinion so that he can testify comprehensively at trial. (Motion to Supplement, Doc. 162, p. 6 ¶ 24)  While denial of Defendants' motion may constrain the topic of their expert's testimony on direct to some degree, their expert should have more than ample opportunity to rebut the opinions of Plaintiff's experts at trial.  Further, while the impact upon the ruling below is one concern in deciding a motion to extend discovery, "[t]he overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery." *Id*.  From the outset, the record establishes that Defendants have not pursued discovery diligently.

Despite being given more than a year in which to prosecute discovery, Defendants delayed initiating discovery eight months from removal of this case from state court and more than six months from the initial case management order.  While it is true that Plaintiffs' experts were deposed rather late in the schedule that was a strategic decision on Defendants' part.

Further, it is readily apparent that Defendants were well acquainted with the individuals that they eventually deposed and with each expert's involvement in the ESOP transaction at issue here. Indeed, Defendants' disclosures in the initial case management order demonstrate their awareness of the witnesses addressed by Mr. Brown's supplemental report, with the exception of Mr. Blackwell, from the outset of the proceedings. (Initial Case Management Order, Doc. 9, pp. 4-5) Moreover, contrary to their claims, Defendants have not been exactly diligent in attempting to supplement their expert's opinion. The record reflects that Defendants first notified Plaintiffs' counsel of their intent to supplement two months after Mr. Blackwell's deposition on February 7, 2014, and waited nearly ten weeks before moving the court for permission to supplement.

Rule 16 was designed to ensure orderly case management and force the parties to prosecute discovery in a timely manner. Thus, Defendants' Motion to Supplement should be denied because: 1) denial of Defendants' motion to supplement will not be overly burdensome on their case; and 2) Defendants have not been diligent in their prosecution of discovery despite being given more than one and one half years to do so. Nevertheless, out of an abundance of caution, Defendants' will be permitted to supplement the opinion of Mr. Brown but on a very narrow basis.

On June 5, 2014, the Magistrate Judge conducted a hearing on Defendants' motion to supplement Mr. Brown's report. After the close of the hearing, the Magistrate Judge compared the supplement proposed by Defendants with the original expert report. Contrary to counsel for Defendants' statement during oral argument, the supplement is not merely a 17 page supplement to Mr. Brown's original 32 page document. To the contrary, the supplement at issue here spans 39 pages but excludes twelve pages of Mr. Brown's original report including: 1) a discussion of Mr. Brown and his firm; 2) a discussion of Mr. Zander and the history of his company; 3) an

overview of ESOP structures and their potential benefits; and 4) a discussion of Mr. Andrew Machir and his involvement in the transaction giving rise to the ESOP plan that forms the basis of Plaintiffs' claims. (Exhibit 4 to Defendants' Response to Plaintiffs' Motion to Strike Expert Testimony Regarding Standard of Care ("Exh. 4 to D. Motion to Strike"), Doc. 96-4, pp. 4-7, 8-9, 13-15, 16-18) All told, the supplement consists of 34 pages of substantive additions and alterations touching on areas outside of the scope of Mr. Brown's initial report and conclusion.

Defendants' motion to supplement is **GRANTED** only in part. The supplement may not extend beyond the areas upon which Mr. Brown's original summary and conclusions are drawn.[1] (Exh. 4 to D. Motion to Strike, Doc. 96-4, p. 19) In particular, Defendants will not be permitted to supplement Mr. Brown's expert report to address the negligence, liability, or comparative fault of *any* entities beyond those named in this cause.[2] The District Judge of course retains full authority over what will be admissible at trial for rebuttal and impeachment depending on how the actual evidence develops.

Any supplement to the expert report shall be filed on or before June 16, 2014. In accord with Local Rule 16.01(f)(2), motions for review of this order may be filed on or before **June 13, 2014**. The party opposing any such motion may have until **June 20, 2014** to respond. This

---

[1] When presented with the possibility that the Magistrate Judge may permit Defendants the opportunity to supplement Mr. Brown's report to some degree at oral argument, Mr. Bulso, Plaintiffs' counsel, stated emphatically that Plaintiffs would not seek to depose Mr. Brown subsequent to any supplementation of his report. According to Mr. Bulso, Plaintiffs "have no interest in taking Mr. Brown's deposition. We have many many other things to do."

[2] At that hearing, counsel for Plaintiffs directed the court's attention to the deposition testimony of Mr. Brown where he was asked if he had formed an opinion as to whether "2nd Generation Capital, LLC, [was] at fault for any of the losses complained of?" (Deposition of Mr. Frank Brown ("Deposition") pp. 137-38, Doc. 164, p. 36) In response, Defendants' lead counsel at the time, Mr. Edwards, objected and responded that Defendants "have not asked [Mr. Brown] to opine on any comparative fault." (Deposition p. 138, Doc. 164, p. 36) Mr. Brown also responded that he had "not been engaged to look at that." (Deposition p. 138, Doc. 164, p. 36) Undeterred, counsel for Plaintiffs pressed the issue. (Deposition pp. 138-144, Doc. 164, pp. 36-7) Ultimately, Defendants' counsel stipulated that Mr. Brown "is not going to give opinions as to the liability in the second— or the comparative fault parties . . . [i]t is not in his report [and h]e is not going to testify about it." (Deposition p. 144, Doc. 164, p. 37). Given this statement it is far too late to change horses now.

schedule should allow the matter to be briefed in time for Judge Sharp to consider it at the Final Case Management Conference.

It is so **ORDERED**

/s/Joe B. Brown  
Joe B. Brown  
U.S. Magistrate Judge